**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**PLANNED PARENTHOOD ARKANSAS**
**& EASTERN OKLAHOMA, d/b/a**
**PLANNED PARENTHOOD OF THE**
**HEARTLAND; JANE DOE #1; JANE DOE**
**#2; and JANE DOE #3**                                                    **PLAINTIFFS**

**v.**                            **Case No. 4:15-cv-00566-KGB**

**JOHN M. SELIG, DIRECTOR, ARKANSAS**
**DEPARTMENT OF HUMAN SERVICES, in his**
**official capacity**                                                      **DEFENDANT**

**ORDER**

Before the Court is the motion for class certification filed by plaintiffs Planned

Parenthood of Arkansas & Eastern Oklahoma, d/b/a Planned Parenthood of the Heartland

("PPH") and Jane Doe #1, Jane Doe #2, and Jane Doe #3 ("Jane Does") (Dkt. No. 50).

Defendant John M. Selig, sued in his official capacity only as the Director of the Arkansas

Department of Human Services ("ADHS"), has responded in opposition to the motion for class

certification (Dkt. No. 71), and PPH and the Jane Does have filed a reply (Dkt. No. 72). The

Court conducted a hearing in this matter on January 14, 2016, at which counsel for all parties

were present. ADHS filed a post-hearing supplemental response to plaintiffs' motion for class

certification (Dkt. No. 82). For the reasons that follow, plaintiffs' motion for class certification

pursuant to Federal Rule of Civil Procedure 23 is granted.

## I.       Background

PPH operates health centers in Little Rock, Arkansas, and Fayetteville, Arkansas, and has

done so for over 30 years. These centers provide family planning services to men and women,

including contraception and contraceptive counseling, screening for breast and cervical cancer,

pregnancy testing and counseling, and early medication abortion.   PPH states that, at its Arkansas health centers, PPH offers only early medication abortions, services that Arkansas Medicaid does not cover in virtually all circumstances (Dkt. No. 12, ¶ 17).   PPH and the Jane Does represent that Medicaid payment for abortion is not at issue in this case (Dkt. No. 12, ¶ 17). PPH also operates a pharmacy that serves Arkansas residents which allows patients to have their birth control prescriptions automatically refilled.   During the 2015 fiscal year, PPH represents that it provided approximately 1,000 health care visits and filled more than 1,100 prescriptions, for over 500 women, men, and teens insured through Medicaid in Little Rock and Fayetteville, Arkansas.   In 2014, almost 40% of PPH's Little Rock, Arkansas, patients, and 15% of its Fayetteville, Arkansas, patients were insured through Medicaid, according to PPH.   Plaintiffs Jane Does are patients of PPH who receive their care through the Medicaid program.

PPH and the Jane Does allege that ADHS, through its director Mr. Selig, notified PPH on August 14, 2015, that ADHS was terminating its Medicaid provider agreements, effective 30 days from the date of the letter (Dkt. No. 16-1, at 19).   PPH and the Jane Does further allege that this initial notification letter provided no reason for the termination of the agreements; they assert that this initial termination appears to stem from PPH's association with Planned Parenthood and abortion (Dkt. No. 12, ¶ 35).   To support their contention that ADHS wrongfully suspended Medicaid payments to PPH, PPH and the Jane Does cite Arkansas Governor Asa Hutchinson's press release from August 14, 2014, the day the termination letter was sent to PPH.   In this release, Governor Hutchinson states that he directed ADHS to terminate the agreements because "[i]t is apparent that after the recent revelations on the actions of Planned Parenthood, that this organization does not represent the values of the people of our state and Arkansas is better served by terminating any and all existing contracts with them."  (Dkt. No. 12, ¶ 35).

PPH and the Jane Does further assert that Governor Hutchinson's reference to "recent revelations" regarding Planned Parenthood refers to recent videos released about Planned Parenthood, claiming that some Planned Parenthood affiliates allow patients to donate fetal tissue to medical research following abortions (Dkt. No. 12, ¶ 35).

ADHS followed this August 14, 2015, letter with a second termination letter dated September 1, 2015, that ADHS characterizes as a "for cause" letter. PPH and the Jane Does allege that this second letter states solely that it "is based in part upon the troubling circumstances and activities that have recently come to light regarding the national Planned Parenthood organization, Planned Parenthood of the Heartland, and other affiliated Planned Parenthood entities, all of which are affiliated with [PPH]," and that "there is evidence that [PPH] and/or its affiliates are acting in an unethical manner and engaging in what appears to be wrongful conduct." (Dkt. Nos. 12, ¶ 37; 16-1, at 21−26). The letter also states that PPH is "welcome to submit information or offer comments on the nationally recognized videos that have raised questions on the conduct of Planned Parenthood." (Dkt. Nos. 12, ¶ 37; 16-1, at 21−26).

PPH and the Jane Does filed a motion for temporary restraining order and preliminary injunction on September 11, 2015 (Dkt. No. 3). This motion alleges that, starting on September 21, 2015, absent an injunction, patients insured through the Medicaid program who choose to get family planning and other health care services at PPH will lose access to services, will lose their provider of choice, will find their family planning services interrupted, and will be left with few or no adequate alternative providers (Dkt. No. 12, ¶¶ 8, 34). As for PPH, PPH and the Jane Does contend that, "[i]f PPH is forced to stop providing care through the Medicaid program, a dire situation will become critical. The remaining providers will be simply unable to absorb PPH's

patients, leaving those patients without access to crucial medical services." (Dkt. No. 12, ¶ 43). Further, they allege that "[w]ithout Medicaid reimbursements, PPH may be unable to continue to provide services in the same manner and may be forced to lay off staff members and/or reduce hours at one or both health centers." (Dkt. No. 12, ¶ 49).  They also allege that, "if PPH's termination from the Medicaid program is allowed to take effect for some period of time and it then is later allowed to become a Medicaid provider again, some patients will remain confused about whether PPH is a Medicaid provider in good standing, and therefore will not return as patients." (Dkt. No. 12, ¶ 49).  PPH and the Jane Does claim that the suspension of Medicaid payments violates certain provisions of the Medicaid statutory and regulatory scheme set out in 42 U.S.C. § 1396 and violates their rights under the First and Fourteenth Amendments to the United States Constitution.  They have sued ADHS's director, Mr. Selig, in his official capacity only seeking declaratory and injunctive relief (Dkt. No. 12, at 15).

This Court granted PPH and the Jane Does' motion for temporary restraining order (Dkt. No. 21).  The Court temporarily restrained ADHS "for a period of 14 days from the date of entry of this Order from suspending Medicaid payments to PPH for services rendered to Medicaid beneficiaries, including but not limited to the Jane Does." (Dkt. No. 21, at 19).  At that stage of the proceedings, the Court conducted a status conference with counsel concerning a briefing schedule and potential hearing.  For the reasons set forth in its Order, the Court permitted ADHS to obtain evidentiary material from the Jane Does (Dkt. No. 25).  The Court did not regulate the number, scope, or timing of the written questions ADHS submitted to the Jane Does.  The Court instructed counsel from both sides to meet and confer on these matters, and although the Court did later enter an Order clarifying its earlier Order on the permitted discovery, the Court was not asked to resolve or clarify any other issues in regard to the questions submitted to the Jane Does

(Dkt. No. 32).   Also at this stage of the proceeding, the Court raised with counsel again and directed counsel to brief standing issues.

The Court then entered a preliminary injunction more limited in scope – limiting the relief granted to just the Jane Does (Dkt. Nos. 44, 45).   The Court then granted PPH and the Jane Does leave to file a second amended complaint (Dkt. No. 63).   In their second amended complaint, PPH and the Jane Does add class action allegations (Dkt. No. 64, ¶¶ 50−55).

On October 6, 2015, ADHS filed a motion for leave to notice four depositions (Dkt. No. 56).   The Court conducted a status hearing on the motion.   ADHS requested leave to depose Jane Doe #1, Jane Doe #2, and Jane Doe #3 and to conduct a Federal Rule of Civil Procedure 30(b)(6) deposition of a PPH representative before responding to the pending motion for class certification.   ADHS claims that it seeks these depositions to test, at least, the typicality and adequacy requirements for class certification (Dkt. No. 55, at 4).   For the reasons set forth in its Order, the Court denied the motion for leave to notice four depositions (Dkt. No. 66).

PPH and the Jane Does are now asking this Court to certify a class, and ADHS at the hearing conducted in this matter orally renewed its request to conduct precertification discovery.

## II.    Discussion

PPH and the Jane Does seek class-action certification under Rule 23 of the Federal Rules of Civil Procedure for "the Jane Doe plaintiffs and all other persons similarly situated, namely: patients who seek to obtain, or desire to obtain, health care services in Arkansas at PPH through the Medicaid program."  (Dkt. No. 50, at 1).

To obtain class certification, plaintiffs must meet all four requirements of Federal Rule of Civil Procedure 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation, and must fall into one of the categories of Rule 23(b).  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Blades v. Monsanto Co.*, 400 F.3d 562,

568−69 (8th Cir. 2005); Fed. R. Civ. P. 23.  The party seeking certification bears the burden of

showing that the class should be certified and that the requirements of Rule 23 are met.  *Coleman*

*v. Watt*, 40 F.3d 255, 258−59 (8th Cir. 1994).  The district court is afforded broad discretion to

decide whether certification is appropriate.  *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372

(8th Cir. 2013) (quoting *Prof'l Firefigthers Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d

640, 645 (8th Cir. 2012)).  According to the Eighth Circuit:

> A district court considering a motion for class certification must undertake a
> rigorous analysis to ensure that the requirements of Rule 23(a) are met.
> Frequently that rigorous analysis will entail some overlap with the merits of the
> plaintiff's underlying claim, and the district court may resolve disputes going to
> the factual setting of the case if necessary to the class certification analysis.  The
> court's factual findings with respect to the class certification question are
> reviewed for clear error.

*Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011) (internal quotations and citations

omitted).  The Court will consider Rule 23(a) and (b) in turn.

### A.    Rule 23(a)

To certify a class pursuant to Rule 23(a)(1), this Court must first make a finding that "the

class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).

PPH and the Jane Does assert that the class is so numerous that joinder of all members is

impracticable.  In support of this assertion, plaintiffs note that, in fiscal year 2015, PPH provided

care to over 500 Arkansas women, men, and teens insured through Medicaid, and in the previous

fiscal year, PPH saw more than 1,100 women, men, and teens insured through Medicaid (Dkt.

No. 51, at 3).  PPH and the Jane Does contend that the size of the proposed class readily meets

the numerosity requirement, as joinder of all of PPH's Medicaid patients is impractical.

PPH and the Jane Does also argue that "joinder of each of PPH's individual Medicaid

patients is impractical for the additional reason that many patients may be hindered in their

ability to join the litigation by the highly sensitive and personal nature of reproductive health

care decisions, and because of their fear of becoming the targets of anti-abortion or anti-Planned Parenthood hostility." *Singleton v. Wulff*, 428 U.S. 106, 117 (1976) ("[an abortion patient] may be chilled from such assertion [of her rights] by a desire to protect the very privacy of her decision from the publicity of a court suit."); *Gold Cross Ambulance & Transfer v. City of Kansas City*, 705 F.2d 1005, 1016 (8th Cir. 1983) (characterizing the abortion decision at issue in *Singleton* as "an intimate, private decision" that hindered patients' ability to assert their rights); *Planned Parenthood of Minnesota, Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 865 n.3 (8th Cir. 1977) (recognizing that "the pregnant woman's ability to assert her own rights is beset with obstacles," including "her desire to protect her privacy").

ADHS does not dispute that the numerosity requirement has been met.  Plaintiffs have provided sufficient evidence to satisfy their burden as to this factor.  *See Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 54 (8th Cir. 1977) ("No arbitrary rules on the size of classes have been established by the courts and the question of what constitutes impracticability depends upon the facts of each case.")

Rule 23(a)(2) next requires there to be "questions of law or fact common to the class." Rule 23(a)(2) does not require that every question of law or fact be common to every member of the class.  *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561 (8th Cir. 1982).  Commonality may be satisfied "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated."  *Id.*  (internal quotations and citations omitted).  The existence of even a single common question is sufficient to establish commonality.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, —, 131 S. Ct. 2541, 2556 (2011).  PPH and the Jane Does contend that, since this litigation focuses on the injury caused to all class members by the state's actions, questions of law are necessarily common.  *See*

*U.S. Fid. and Guar. Co. v. Lord*, 585 F.2d 860, 871 (8th Cir. 1978) (commonality requirement met where there is a "basic legal and factual allegation in the Complaint which applies 'across the board' to all members of plaintiffs' class").

PPH and the Jane Does argue that the Jane Does and the other proposed class members raise the same question of law:  whether defendant's termination of PPH Medicaid provider agreements violates the Medicaid free choice of provider requirement, which states that "any individual eligible for medical assistance. . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required. . . who undertakes to provide him such services."  42 U.S.C. § 1396a(a)(23).  To this point, this Court noted in the Preliminary Injunction Order that the question turns on "whether Arkansas can terminate PPH as a qualified Medicaid provider for the reasons it articulates in this litigation without violating the freedom of choice provision" (Dkt. No. 45, at 23−24).

Plaintiffs have demonstrated that there is, in fact, a question of law common to the class. The Court finds this requirement met.

Rule 23(a)(3) includes a "typicality provision [that] requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977).  The typicality requirement generally is satisfied "if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory.'" *Paxton*, 688 F.2d at 561–62 (quoting C. Wright & A. Miller, Federal Practice and Procedure § 1764 at n.21.1 (Supp. 1982)).  "The burden of showing typicality is not an onerous one." *Id*.  It requires something more than general conclusory allegations, *id*., but it "is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortgage*

*Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995).  "When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment."  *Donaldson*, 554 F.2d at 831.

ADHS argues that there are differences weighing against a finding of typicality, including that "absent class members will have vastly different circumstances from each other and from the Jane Does that will affect the irreparable harm analysis."  (Dkt. No. 71, at 16).  ADHS contends that these differences include, but are not limited to, whether a patient prefers PPH to other Medicaid providers, whether a person has experienced or will experience longer lines and more difficult scheduling at other Medicaid providers compared to PPH, and whether a person has another Medicaid provider to which they have gone, can go, and will go.  ADHS also argues that these differences include whether a proposed class member is a Little Rock resident (where the named Jane Does live and about which they have provided information) or a Fayetteville resident (where the named Jane Does do not live and about which they have provided no information) (Dkt. No. 71, at 16).  ADHS further contends that typicality is absent because the claim brought for injunctive relief requires resolution not just of the 42 U.S.C. § 1396a(a)(23) issue but also of the threat of irreparable harm.  ADHS argues that, given what it contends is an overly broad proposed class, the Court should conclude the differences concerning irreparable harm cause a lack of typicality even where the legal 42 U.S.C. § 1396a(a)(23) issue is similar to all (Dkt. No. 71, at 16–17).

PPH and the Jane Does counter this argument by citing an Alabama district court case with facts almost identical to the facts presented here.  In that case, the Court found that, "because the only attribute of Doe relevant to the court's resolution of this claim is one that she shares with all [patients]  –  namely, that she is a Medicaid recipient who wishes to receive

covered care from [Planned Parenthood] − there is no possibility that additional evidence would reveal that the injunction would be any less appropriately entered with respect to another recipient not presently a party to the case." *See Planned Parenthood Southeast, Inc. v. Bentley*, Case No. 2:15-cv-620-MHT, 2015 WL 6517875, at *15 (M.D. Ala. Oct. 28, 2015).  In addition, there is Eighth Circuit precedent that "[f]actual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *See Alpern v. UtiliCorp United, Inc*., 84 F.3d 1525, 1540 (8th Cir. 1996) (citing *Donaldson*, 554 F.2d at 831).

The Court is satisfied that the typicality requirement is met here.  ADHS's termination of PPH's Medicaid provider agreements gives rise to identical claims for violation of the free choice of provider right by the Jane Doe plaintiffs and PPH's other existing and future Medicaid patients.  Plaintiffs and other class members will rely on the exact same legal theory in challenging ADHS's actions.

As for ADHS's argument that typicality is absent because the purported differences concerning irreparable harm cause a lack of typicality even where the legal 42 U.S.C. § 1396a(a)(23) issue is similar to all, the Court rejects the argument.  Throughout this litigation, ADHS has cited the Court to various non-controlling authority from district courts in other circuits in support of its contention that "it is also black letter law that irreparable harm may not be presumed merely from a violation of a statute." (Dkt. No. 71, at 15).  In its analysis of irreparable harm in the Preliminary Injunction Order, the Court discussed more than just the alleged statutory harm (Dkt. No. 45).  The Court concluded that the Jane Does, based on the alleged threat of statutory harm and other irreparable harms identified, met their burden to merit injunctive relief (Dkt. No. 45, 18−22).  On the record before the Court, the Janes Does have put

into the record evidence that the other forms of harm they identified likely apply to all of the proposed class members.  In the Court's Preliminary Injunction Order, the Court found that the Arkansas Department of Health's own documents reflect that long wait times and delays in scheduling appointments are commonplace among county health clinics that offer family planning services and other preventative care (Dkt. No. 45, ¶ 26; Dkt. Nos. 26-5, 26-6).  The Court finds the typicality requirement met on this record.

Lastly, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The focus of Rule 23(a)(4) is whether:  (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel."  *Paxton*, 688 F.2d at 562−63.

The Jane Does argue that they have the same injuries, interests, and legal theories as the class as a whole, demonstrating their ability to represent adequately the class interests.  They claim that their interests are not "antagonistic to the remainder of the class," and, as can be seen already in this case by their quickly responding to the written discovery propounded by ADHS, they "vigorously pursue[]" their claims.  *DeBoer*, 64 F.3d at 1175.

ADHS asserts that "[t]he inquiry into adequacy of representation, in particular, requires the district court's close scrutiny . . . ."  *Rattray v. Woodbury County, IA*, 614 F.3d 831, 835 (8th Cir. 2010) (citing *Hansberry v. Lee*, 311 U.S. 32, 41 (1940)).  ADHS cites this Court to non-binding precedent in support of its argument that "to assess the adequacy of the named representatives, courts have looked to factors such as their honesty, conscientiousness, and other affirmative personal qualities."  7A C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure*, Civil 2d § 1766 at 308−10.

11

Based upon the cases from other circuits cited by ADHS in its filing in support of this contention, ADHS asserts that the Jane Does are not conscientious because of certain mistakes on the record that the Jane Does made and later corrected during the very short time frame they were given to respond to the propounded questions.  The Eighth Circuit has articulated no specific requirement that courts assess conscientiousness when analyzing whether to certify a class under Federal Rule of Civil Procedure 23.  As such, the Court declines to do so.  Even if the Court were required to do so, the Court rejects the suggestion that any lack of conscientiousness is demonstrated by the record before it or that any purported issues of honesty or other affirmative personal qualities of the Jane Does dictate that class certification is inappropriate here.

ADHS next argues that federal courts across the county require potential class representatives to prove they are both willing and able to control and supervise class counsel and to participate in the direction and strategy of the litigation.

The Court is unpersuaded by this attempt to expand the adequacy requirement beyond what is required by the Eighth Circuit Court of Appeals — "whether:   (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562−63.  As to the first prong, the Court finds that plaintiffs have common interests with the members of the proposed class.  As to the second prong, the Court finds that plaintiffs have "demonstrated a willingness to prosecute the interests of the class through qualified counsel."  *Id*. at 563.  Even if the requirements are as ADHS suggests, this Court noted in a prior Order in this case that "[t]he Jane Does, through the materials they have submitted, have demonstrated they are in communication with counsel and interested in this litigation."

(Dkt. No. 66, at 2).  The Jane Does have responded to ADHS's written discovery "in detail and on very short notice." (*Id.*).  In short, the Court finds even the requirements ADHS suggests satisfied here.

ADHS also attempts to persuade the Court that, because the Jane Does were "recruited" for this litigation and have "work schedules, life schedules, and other obligations," that they are somehow inadequate to serve as class representatives (Dkt. No. 71, at 9).  How the Jane Does came to be involved in this litigation is immaterial to their adequacy to serve as class representatives.  *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 n.11 (1981); *In re Primus*, 436 U.S. 412, 422, 426−31 (1978).  In addition, that the Jane Does have busy work schedules and other obligations does not lead this Court to conclude on the record before it that they "have not been in control of this lawsuit, and they are not able and willing to meaningfully control or supervise Planned Parenthood's counsel," as ADHS argues (Dkt. No. 71, at 11).

ADHS next attempts to refute the Jane Does' claim of adequacy by contending that attorney Jennifer Sandman, counsel for the Jane Does, is "Deputy Director of the Planned Parenthood Federation of America." (Dkt. No. 71, at 2, n.2).  Again, the Court finds it difficult to discern how this argument fits into the Eighth Circuit's *Paxton* analysis, but the Court notes that, according to the record before it, Ms. Sandman is Deputy Director of a department within Planned Parenthood Federation of America ("PPFA") called Public Policy Litigation and Law — a department that conducts litigation throughout the country on behalf of Planned Parenthood affiliates and their patients and, thus, has a traditional attorney-client relationship with PPH and the Jane Does.  Neither she nor the organization with whom she works has control over the business decisions of PPH, PPFA, or any other Planned Parenthood entity (Dkt. No. 26-3, ¶ 6).

ADHS also argues that PPH has a financial stake in this litigation that could create a

conflict.  PPH and the Jane Does counter this by claiming that "PPH is a nonprofit organization that brought this action (along with the Jane Does) to enjoin Defendant from excluding PPH from the Medicaid program and to ensure that PPH can continue to 'provid[e] basic and preventive health care services and medications to the Arkansas women and men who depend on [PPH] for these services.'" (Dkt. No. 3, at 5−9, ¶¶ 3, 6, 15).  The Jane Does are also represented by Bettina E. Brownstein on behalf of the Arkansas Civil Liberties Union Foundation, the Arkansas affiliate of the American Civil Liberties Union, a not-for-profit organization that has no financial stake in the litigation.  On the record before it, and considering all authorities cited, the Court finds that Rule 23(a)(4)'s adequacy requirement has been met.

### B.      Rule 23(b)

Having determined that the Jane Does meet Rule 23(a)'s requirements, the Court turns to examine the requirements of Rule 23(b).  PPH and the Jane Does move to certify the class under Rule 23(b)(2), or, in the alternative, under Rule 23(b)(1)(B).  Rule 23(b)(2) applies if the defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The Jane Does argue that the United States Supreme Court and the Eighth Circuit have recognized that class actions under Rule 23(b)(2) are particularly appropriate in the context of civil-rights litigation.  *See Amchem*, 521 U.S. at 614; *see also Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980) (reversing denial of certification under 23(b)(2) of a class of inmates confined at the state hospital claiming violation of their constitutional rights); *U.S. Fid. and Guar. Co.*, 585 F.2d at 875 (affirming certification under 23(b)(2) of a class of female employees claiming sex discrimination).  Indeed, "[b]ecause one purpose of Rule 23(b)(2) was to enable plaintiffs to bring lawsuits vindicating civil rights, the rule must be read

liberally in the context of civil rights suits." *Coley,* 635 F.2d at 1378 (internal quotation marks and citation omitted).

PPH and the Jane Does also claim that certification under Rule 23(b)(2) is appropriate here because the primary relief sought is declaratory or injunctive. *See Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1035 (8th Cir. 2010); *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005). If the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2). *DeBoer*, 64 F.3d at 1175. In addition, class claims must be cohesive: "Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries." *In re St. Jude*, 425 F.3d 1122 (citation omitted); *see also Paxton*, 688 F.2d at 563 (district court erred in denying certification under 23(b)(2) in "case seeking injunctive relief against class-wide race discrimination in the bank's promotion practices."); *Coley*, 635 F.2d at 1378 (district court erred in denying certification under 23(b)(2) where inmate class members presented common questions of allegedly unlawful commitment procedures and conditions); *U. S. Fid. and Guar. Co.*, 585 F.2d at 875 (certification of class claiming sex discrimination proper under 23(b)(2) where dispute turned on "acts of an employer on. . . grounds generally applicable to the class") (internal quotation marks and citation omitted).

PPH and the Jane Does state that, because their claims "turn[] on a single question that uniformly applie[s] to all class members . . . ," and "[r]esolution of that question as to one of the plaintiffs necessarily resolve[s] the issue for the entire class," *Avritt*, 615 F.3d at 1036 (discussing *DeBoer*, 64 F.3d 1171), and because class certification is sought to vindicate the rights of PPH's patients under the Medicaid Act through injunctive and declaratory relief, class certification should be granted pursuant to Rule 23(b)(2). PPH and the Jane Does argue that

ADHS's decision to terminate PPH from participation in the Medicaid program affects all class members identically, in that, absent relief from this Court, they will no longer be able to obtain family planning and other preventative healthcare services from their Medicaid provider of choice. PPH and the Jane Does further argument that the relief sought – a declaratory judgment preventing PPH's termination from the Medicaid program and an injunction allowing it to continue providing services to its existing and future Medicaid patients – is identical as to all class members.

ADHS argues that, because of the scope of the proposed class, the Jane Does also cannot meet the requirements of Rule 23(b)(2) (Dkt. No. 71, at 17, n.18). ADHS claims that injunctive relief is "not appropriate to the whole class because the proposed class would include people who – under anybody's conception of the correct legal test – either definitely do not, or may not, have irreparable harm." (*Id.*). ADHS claims that the proposed class is too broad, imprecise, and subjective to meet Rule 23(b)(2)'s requirements.

The Court finds that ADHS acted on grounds that generally apply to the class when it terminated PPH from the Medicaid program, affecting all class members, and that injunctive relief is appropriate as to the class as a whole if relief is to be granted. Finding that the requirements of Rule 23(b)(2) are met, the Court does not reach plaintiffs' arguments as to Rule 23(b)(1)(B).

### C.      Scope of the Class

ADHS argues that, if the Court decides to certify a class, it should certify a "more precise, ascertainable, and efficient class" (Dkt. No. 71, at 19). ADHS requests that the Court limit the class to existing patients of PPH's Little Rock facility because it claims those are objectively the patients whose claims, including irreparable harm, are similar enough to the

named Jane Does' claims for class certification.      "The class definition must be drafted in such a way to ensure that membership is ascertainable by some objective standard."   *Walls v. Sagamore Ins. Co.*, 274 F.R.D. 243, 250 (W.D. Ark. 2011) (citing *In re Teflon Products Liab. Litig.*, 254 F.R.D. 354, 360 (S.D. Iowa 2008)).   In ascertaining the class, the court "should not be required to resort to speculation, or engage in lengthy, individualized inquiries."   *Brown v. Kerkhoff*, 279 F.R.D. 479, 496 (S.D. Iowa 2012) (internal quotation marks and citation omitted). Federal Rule of Civil Procedure 23(c)(1)(B) states that "an order that certifies a class action must define the class and the class claims, issues, or defenses . . . ."   Courts should make sure the class definition is clear and that the membership of the class is ascertainable.   *See Riedel v. XTO Energy, Inc.*, 257 F.R.D. 494, 506 (E.D. Ark. 2009); *see also Brown*, 279 F.R.D. at 496 (same).

ADHS argues that the proposed class definition is overbroad, imprecise, and subjective (Dkt. No. 71, at 18).   ADHS claims that it is unclear what the difference is between patients "who seek to obtain . . . covered health services at PPH" and patients who "desire to obtain . . . covered health services at PPH."   It also claims that, "to the extent that the proposed class includes people who have never set foot in a PPH facility or can afford to pay for PPH services even without the Medicaid program, it would cause significant typicality and efficiency concerns." (Dkt. No. 71, at 18).   PPH and the Jane Does contend that the argument that some class members will be able to pay for care out of pocket is misplaced because, by definition, Medicaid recipients are needy individuals and families who cannot afford medical care on their own and have therefore been determined by the state to be financially eligible for the program. *See* Ark. Admin. Code R. 016.20.1-A-100; R. 016.20.1-E-100.

In response, PPH and the Jane Does contend that the proposed class is sufficiently precise and ascertainable, and they contend that there exists an administratively feasible method for

ascertaining the class (Dkt. No. 72, at 9).  They claim that the proposed class definition is based on objective, straightforward criteria:   whether a Medicaid patient seeks or desires to seek services from PPH.  PPH and the Jane Does state that the distinction between patients who "seek to obtain" and "desire to obtain" covered services from PPH is necessary at this time because the injunction currently in place does not enjoin ADHS from suspending Medicaid payments to PPH for services rendered to Medicaid beneficiaries other than the Jane Does.  Thus, there may be class members who desire to obtain Medicaid services from PPH but will not seek to obtain them at this time.  PPH and the Jane Does add that, should the class be certified and the preliminary injunction extended, these two categories would merge to cover all current and future Medicaid patients of PPH.  PPH and the Jane Does further note that both ADHS and PPH keep records of the patients who receive Medicaid-eligible services at PPH and that, therefore, there is an administratively simple way to determine who the class members are both currently and as new patients seek Medicaid services at PPH.

Ascertainability does not require that a plaintiff must be able to identify all class members at the time of class certification; rather, a plaintiff need only show that class members can be identified.  *See Riedel*, 257 F.R.D. at 506 (quoting Manual for Complex Litigation § 21.222 (4th ed. 2004)).  PPH and the Jane Does argue that fluidity of a class weighs in favor of class certification.  *See Brown v. Plata*, 131 S. Ct. 1910, 1926, 1940 (2011) (affirming class-wide injunctive relief for classes of "seriously mentally ill persons in California prisons" and California "state prisoners with serious medical conditions" and observing that "[r]elief targeted only at present members of the plaintiff classes may . . . fail to adequately protect future class members who will develop serious physical or mental illness"; injunctive relief should extend to "[p]risoners who are not sick or mentally ill [and thus who] do not yet have a claim that they

have been subjected to care that violates the Eighth Amendment . . . [because] [t]hey are that system's next potential victims").

The Court finds that the class definition is drafted in a way such that class members are ascertainable by objective criteria and declines to narrow the scope of the class.

### D.     Certification As To All Claims

ADHS argues that, in PPH and the Jane Does' motion for class certification, they only suggest that the 42 U.S.C. § 1396a(a)(23) claim meets Rule 23(a)'s commonality and typicality requirements.   ADHS also states that inPPH and the Jane Does' discussion of the reasons that certification is proper under Rule 23(b)(2) or 23(b)(1)(b), they only discuss the Medicaid Act claim.  In response to ADHS's claims that the Rule 23 requirements have not been met for PPH and the Jane Does' two constitutional claims in this case, plaintiffs argue that the class certification analysis is the same for the statutory Medicaid Act claims and the constitutional claims, in that, under either legal theory, the Jane Does and other members of the proposed class are identically situated—"they are individuals who desire to receive family planning and other preventive health services from PPH through the Medicaid program, and whose ability to do so is jeopardized by DHS's termination of PPH from the Medicaid program" (Dkt. No. 72, at 11). The Court declines to limit class certification to the 42 U.S.C. § 1396a(a)(23) claim because the injunctive relief that PPH and the Jane Does seek applies to all claims.

### E.     Evidentiary Hearing On Class Certification

ADHS requested an evidentiary hearing on the matters of class certification, and the Court denied that request.  At the hearing conducted on this motion, ADHS orally renewed its request for precertification discovery or an evidentiary hearing on class certification.  The Court again denies these requests.

ADHS claims that precertification discovery or an evidentiary hearing will provide the Court the best opportunity to determine whether or not the moving party has satisfied the requirements of Rule 23 and, thus, will best protect absent potential class members.  In support of its argument, ADHS cites *International Woodworkers of America AFL-CIO, CLC v. Georgia-Pacific Corp.*, 568 F.2d 64 (8th Cir. 1977), and claims that the Eighth Circuit reversed the district court where the district court denied class certification and dismissed outright a putative class action complaint, acting without holding a hearing or taking evidence on the Rule 23 factors.  PPH and the Jane Does argue that the current record contains enough evidence to show that the Jane Doe plaintiffs have met the standard for class certification.

The case on which ADHS relies quotes another Eighth Circuit case, *Walker v. World Tire Corporation*, 563 F.2d 918 (8th Cir. 1977), for the proposition that "[t]he District Court must have before it 'sufficient material . . . to determine the nature of the allegations, and rule on compliance with the Rule's requirements . . . .'  Securing this material does not always require a formal evidentiary hearing. . . .  Where, however, the pleadings themselves do not conclusively show whether the Rule 23 requirements are met, the parties must be afforded the opportunity to discover and present documentary evidence on the issue."  *Id.* at 921.  This Court concludes that the record before the Court is sufficient for the Court to conclude that the Rule 23 requirements examined by this Court have been met.  The Court sees no reason to reconsider its prior rulings on these issues.

### III.     Conclusion

For the foregoing reasons, plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23 is granted.  Counsel for PPH and the Jane Does, Jennifer Sandman

and Bettina Brownstein, are appointed as class counsel for this action.   The Court directs the parties to confer to submit a proposed class notice within 10 days of the date of this Order.

SO ORDERED this 25th day of January, 2016.

_____
Kristine G. Baker
United States District Judge