## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF ARKANSAS –WESTERN DIVISION

PLANNED PARENTHOOD ARKANSAS
& EASTERN OKLAHOMA, d/b/a
Planned Parenthood of the Heartland;
JANE DOE #1; JANE DOE #2; and
JANE DOE #3                                                                          PLAINTIFFS

v.                              Case No. 4:15-cv-00566-KGB

JOHN SELIG, Director, Arkansas,
Department of Human Services, in his
Official Capacity                                                                 DEFENDANT


## DEFENDANT'S MOTION FOR EXPEDITED
## DISCOVERY AND PERMISSION TO FILE A SUR-REPLY

Defendant, John Selig, in his Official Capacity as Director of the Department of Human Services ("DHS"), respectfully submits this motion for (1) limited, expedited discovery and (2) permission to file a sur-reply to PPH's request for an expanded preliminary injunction.

## I.     INTRODUCTION

This motion is about whether PPH and its CEO can rely on made-for-litigation representations to the Court while simultaneously avoiding narrowly tailored discovery of the underlying factual basis for such representations. This question is particularly important where, as here, there are (to be polite) significant indications that PPH's representations are not credible. Limited, expedited discovery is justified and reasonable in light of PPH's renewed made-for-litigation representations that contradict (1) presently existing facts and history in this case and (2) PPH's public statements and actions over the last seven months.

In September of 2015, PPH and the Jane Does filed suit challenging DHS's decision to terminate Medicaid funding to PPH. PPH, its counsel, and its CEO (Suzanna De Baca)

1

repeatedly represented to this Court—in their efforts to secure a temporary restraining order and preliminary injunction—that patients insured through the Medicaid program would lose access to PPH's services on September 21, 2015 because, absent an injunction, PPH would have to discontinue providing free Medicaid related services.  See Doc. 105 at pp. 3 - 4.

This Court granted a preliminary injunction *limited* to the three Jane Doe patient plaintiffs on October 2, 2015.  Despite PPH's direct and explicit representations to the Court that it would have to discontinue providing free Medicaid services, PPH has acted and operated in a manner that directly contradicts its representations.  *Id*. at pp. 5 – 6 & Exhibits A – C.  PPH has both made representations to the public that it will provide services to patients regardless of their ability to pay and has, in fact, continued (and continues to this day) to provide Medicaid services to Medicaid patients free of charge.  They have done so for nearly seven months now.

PPH and its CEO have recently again represented to the Court—this time in its motion for an expanded preliminary injunction on behalf of the patient class—that it will have to discontinue providing free Medicaid services absent a broader, more expansive preliminary injunction.  In its request for an expanded preliminary injunction, PPH failed to mention the fact that it is has continued (and continues to this day) to provide free Medicaid services following the Court's limited preliminary injunction—in direct contradiction of the made-for-litigation representations that PPH initially made to this Court.  PPH only addressed these contradictory public statements and its continued provision of free Medicaid services *after* DHS brought these facts to the Court's attention.[1]  In its reply brief, PPH submitted a new

---

[1] DHS describes these facts in detail in its response brief to PPH's motion for an expanded injunction.  Doc. 105.  These facts are also set forth in the stipulation the parties agreed to sign after DHS uncovered the relevant information.  Doc. 102.  DHS hereby adopts by reference its response brief to PPH's motion for preliminary injunction on behalf of the patient class.  The issues presented in the response brief and this instant motion largely

declaration by its CEO, Suzanna De Baca, making essentially the same made-for-litigation threats as appeared in its original injunction filings in September.  De Baca threatens that *this time* PPH will *really* have to discontinue free Medicaid services.  De Baca also includes a cursory discussion of a sliding scale of charges that PPH *might* implement, but has not yet implemented.  Because it is unclear what the details of this hypothetical sliding scale are, it is impossible to determine whether any Medicaid patients, or how many Medicaid patients, would be unable to use PPH.  PPH has not come forward with a single class member who would be unable to use PPH for Medicaid services under the hypothetical sliding scale of charges.

DHS requested limited discovery on these new issues in the form of (1) written discovery and (2) limited depositions of De Baca or others determined necessary after review of the responses to written discovery.  *See* Exhibit A.  DHS also requested a sur-reply to the motion for preliminary injunction because De Baca's renewed made-for-litigations representations constitute new evidence and new argument, and go to the very heart of the irreparable harm requirement of a preliminary injunction.  *See id*.  PPH has refused to allow any limited discovery and a sur-reply, without even stating any basis why.  *See id*.  The unsupported, vague, and (to be frank) incredible representations made by PPH and its CEO are central to the issue of irreparable harm, and PPH should not be able to force DHS or the Court to simply accept PPH's self-serving statements as true.  DHS and this Court are entitled to know the real facts prior to a decision being made on the expanded preliminary injunction.

---

overlap.  DHS does not restate all the arguments for brevity's sake.  For proper context of the discovery dispute, the Court would be well served to read DHS's response and PPH's reply on the expanded preliminary injunction motion.

II.     FACTS

PPH and the Jane Does filed their complaint for injunctive and declaratory relief on September 11, 2015.  Doc. 1.  The complaint challenged DHS's decision to terminate PPH's participation in the Medicaid program.  PPH and the Jane Does implored this Court to grant a temporary restraining order and preliminary injunction covering all of PPH's Medicaid patients in Arkansas.  *See id*.  PPH and the Jane Does understood that they had a high burden of proving, *inter alia*, irreparable harm to obtain a preliminary injunction.  PPH and the Jane Does—in their efforts to obtain a preliminary injunction—represented to this Court, in pleadings, in a declaration of PPH's CEO, and at a hearing before this Court, that untold numbers of women would no longer be able to obtain family planning services at PPH and would face nearly insurmountable obstacles to obtain such services elsewhere absent a preliminary injunction covering all PPH's Medicaid patients.  Doc. 105 at pp. 3 – 4 (pinpointing, in bulletin point form, the repeated representations by PPH and the Jane Does).

This Court heavily relied on these statements from PPH and its CEO in concluding that it should grant the extraordinary relief of a preliminary injunction to the three Jane Does that sued DHS.  *See* Doc. 45 at p. 21 ("Should the Court fail to issue injunctive relief, the Jane Does will be denied their choice of provider for family planning services.").  The Court granted a limited preliminary injunction on October 2, 2015 to the three patients that sued DHS.  Doc. 44.  Within an hour of the Court issuing its narrow injunction, PPH and De Baca told the public the exact opposite of what it had represented to the Court.  Doc. 105 at pp. 5 – 6 & Exhibits A – C.  De Baca did not inform the public that PPH was discontinuing free Medicaid services in light of the Court's limited injunction.  She, instead, publically stated that PPH would continue working with its patients to provide services regardless of their ability to pay.  *See id*.  And PPH has been true to its words—its words to the public.  DHS has not been required to make (and has not made) Medicaid reimbursements to PPH

for any other Medicaid patients over the past seven months.  Yet, PPH has not raised prices for patients insured through Medicaid or cut or altered services to such patients as a result of not being able to seek reimbursement from DHS.  Doc. 102.

It is an undeniable fact that the irreparable harm that PPH and De Baca so definitively represented to this Court (in October) would occur simply has not occurred. Nonetheless PPH has now filed a motion to expand the preliminary injunction to all PPH patients making the very same made-for-litigation representations that turned out not to be true: that PPH's patients will be irreparably harmed because its patients will lose access to Medicaid services at PPH absent a preliminary injunction pending trial.  Doc. 98.  PPH's motion for an expanded preliminary injunction on behalf of the patient class did not inform the Court that PPH was currently serving all Medicaid patients in the exact same manner and at the exact same price (zero dollars for Medicaid-eligible services) as PPH had been serving them prior to the termination of its Medicaid Provider Agreements.

DHS filed its response to the motion for a preliminary injunction on April 11, 2016. Doc. 105.  The brief illustrated, at length, that this Court could not possibly find credible any statements (whether legal argument or declarations) that suggest a preliminary injunction is necessary to prevent irreparable harm to Medicaid patients during the course of this litigation given the undisputed fact that PPH has been serving Medicaid patients without charge during the last seven months. *See generally* Doc. 105.  PPH filed its reply brief relying upon a new declaration of De Baca, which submitted new evidence.   Doc. 109 & 109-1. De Baca's new declaration includes a number of made-for-litigation representations (1) attempting to explain why PPH initially (in September) said to the Court it would have to start charging Medicaid patients if it did not get an injunction covering all its Medicaid patients, but then did not do so and repeatedly over the last seven months told the public it would treat patients regardless of their ability to pay; (2) suggesting (without any

5

information as to why) that it was untenable for PPH to continue to charge Medicaid patients zero dollars pending trial, despite the cost being a minuscule portion of its multi-million dollar budget; and (3) alluding to (but failing to provide any detail about) a heretofore undisclosed sliding-scale payment system that it *might* put in place if the request to expand the injunction is denied. *See* Doc. 109-1.

DHS promptly requested narrowly tailored discovery given these new representations, especially in the context of De Baca's earlier, similar representations to this Court and PPH's inconsistent actions and public statements to the press. *See* Exhibit A. DHS advised PPH that DHS would narrowly tailor the discovery requests to (1) written discovery, including requests for production, addressing communications (both verbal and written) by PPH's staff about providing or discontinuing free Medicaid services to patients and communications (both verbal and written) by PPH's staff about the sliding-scale mentioned in De Baca's declaration, and (2) a deposition of De Baca (and possibly, based on the responses to written discovery, other PPH staff involved in or with knowledge of the issues). DHS also requested a sur-reply to the motion for preliminary injunction to address the new evidence and arguments in PPH's reply brief. *Id.* PPH flatly refused the discovery requests and the request for a sur-reply.

## III.   ARGUMENT

Parties can engage in discovery prior to the Rule 26(f) conference when authorized by the rules, by stipulation, or by court order. *See* Fed. R. Civ. Pro. 26(d). Courts routinely order expedited discovery where it would "better enable the court to judge the parties' interests and respective chances for success on the merits" at a preliminary injunction hearing. *Edudata Corp. v. Scientific Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984), aff'd. in part, rev'd in part on other grounds, 746 F.2d 429 (8th Cir. 1984). Stated differently, courts have generally, where circumstances permit, allowed parties to engage in expedited discovery in

preparation for a hearing on preliminary injunction. *See e.g.*, *CIENA Corp. v. Jarrard*, 203 F.3d 312, 315 (4th Cir. 2000) (remanding to give the defendant an opportunity to conduct expedited discovery in advance of district court's reconsideration of preliminary injunction motion). The Federal Rules of Civil Procedure do not provide a standard for the Court to use in determining whether a party seeking expedited discovery has met its burden, but courts have generally followed one of two standards: the good cause standard or the preliminary injunction standard. *In re Fannie Mae Derivative Litigation*, 227 F.R.D. 142, 142 (D.D.C. 2005). Under either standard, limited, expedited discovery is appropriate to discover the factual support, or lack thereof, behind PPH's renewed made-for-litigation representations. The requested discovery—in the form of narrowly tailored written discovery and depositions—is essential to properly contesting the irreparable harm element of the preliminary injunction motion before the Court.

### A.   Good cause standard

Good cause exists for limited discovery. PPH and its CEO have made representations to this Court that turned out not to be true. These representations go to the heart of whether irreparable harm exists for patients so as to justify a preliminary injunction. PPH now reasserts nearly identical made-for-litigation representations in its effort to convince this Court that absent class members will face irreparable harm absent an injunction. Discovery that is limited to parsing out the meaning of these representations, and the factual basis (or lack thereof) for the representations, is reasonable in light of PPH's preliminary injunction motion. The party requesting expedited discovery must show that the need for expedited discovery, in consideration of administration of justice, outweighs prejudice to the responding party under the good cause standard. *Semitool, Inc. v. Tokyo Electron Am., Inc.,* 208 F.R.D. 273, 276 (N.D. Cal. 2002); *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.,* 202 F.R.D. 612, 613–14 (D. Ariz. 2001). *Cf. Merrill Lynch, Pierce, Fenner & Smith v. O'Connor,* 194 F.R.D.

618, 624 (N.D. Ill. 2000) ("[W]here a plaintiff seeks expedited discovery to prepare for a preliminary injunction hearing, it makes sense to examine the discovery request . . . on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances.").

The application of the good cause standard depends on the actual circumstances of each case and the consideration of certain factors such as a pending preliminary injunction hearing, the need for discovery, and the breadth of the discovery requests.  A court should examine the appropriateness of a request for expedited discovery by weighing the need for the discovery at that point in the litigation against the breadth of the discovery requests. *Sawhorse Enterprises, Inc. v. Church & Dwight Co., Inc.*, No. 12-6811, 2-13 WL 1343608, *5 (D. N.J. April 3, 2013).   A party seeking discovery should narrowly tailor the scope of information they seek to justify departing from the normal discovery regimen.  *St. Louis Group, Inc. v. Metals & Additives Corp., Inc.*, 275 F.R.D. 236 (S.D. Tex. 2011) (holding "the subject matter related to requests for expedited discovery should be narrowly tailored in scope.").   Examples of narrowly tailored discovery include discovery limited to the issue of personal jurisdiction and discovery limited to determining the identity of persons assigned specific access control numbers.  *See e.g., Lemkin v. Bell's Precision Grinding*, No. 2:08-cv-278, 2009 WL 1542731 *1 (E.D. Pa. July 15, 1998); *Arista Records, LLC, v. Does 1 – 4*, No. 1:07-cv-1115, 2007 WL 4178641 (W.D. Mich. Nov. 20, 2007).

The application of the good cause factors dictate the granting of DHS's motion for expedited discovery.  First, a preliminary injunction motion is pending (DHS requests a hearing).  Second, the discovery is essential for DHS to adequately defend against the preliminary injunction request.  An essential requirement of a preliminary injunction is a showing of irreparable harm.  PPH's alleged irreparable harm is tied inextricably to the alleged inability of Medicaid patients to continue using PPH if PPH cannot get

8

reimbursements from DHS pending trial.  PPH has previously (mis)informed this Court that it would discontinue free Medicaid services absent a preliminary injunction covering all of PPH's Medicaid patients.  The reality is, however, two-fold:  (1) PPH made multiple public statements that it would continue providing services (regardless of a patient's ability to pay) despite its representations to the Court and (2) PPH did just that—it has continued to provide and presently provides Medicaid services at no cost to its patients despite its representations to the Court.

PPH, in its latest request for an expanded preliminary injunction, did not inform the Court of its earlier, inaccurate statements.  PPH has, instead, opted to again represent to the Court that PPH's patients will have to seek Medicaid services elsewhere absent an injunction. DHS challenged the made-for-litigation representations in its response brief.  PPH admitted the inaccuracies of the earlier statements, but sought to justify the inaccuracies through yet another declaration of De Baca.  De Baca's declaration makes unsupported statements suggesting it has now somehow become untenable for PPH to continue to charge Medicaid patients zero dollars pending trial, despite the cost being a minuscule portion of its multi-million dollar budget and despite the last seven months of having charged zero dollars.  De Baca alludes to (but fails to provide any detail about) a heretofore undisclosed sliding-scale payment system that PPH might put in place if the request to expand the injunction is denied.   But it is completely unclear whether this sliding scale is a certainty or just a potential plan, and what the costs might be for patients under this as yet undefined sliding scale.  Without more information, it is really not possible for the Court to make an informed decision about whether a majority of patient class members (or even one class member) would suffer irreparable harm in the absence of an expanded injunction pending trial.  DHS and this Court should not be forced to accept the renewed made-for-litigation representations at

face value.  The requested discovery is reasonable to determine whether the statements are true and what the vague declaration really means.

Third, the proposed discovery is narrowly tailored.  DHS's proposed discovery is limited to parsing out facts that either support or undermine PPH's claim of irreparable harm on behalf of its patients.  DHS's proposed discovery is limited to the facts and/or communication by PPH supporting or undermining De Baca's latest, incredible representations.  The discovery would be limited to written discovery (including requests for production) to address communications (both verbal and written) by PPH's staff about (1) providing or discontinuing Medicaid services to patients and (2) communications (both verbal and written) by PPH's staff about the sliding-scale mentioned in De Baca's declaration.  The discovery would also include the deposition of De Baca (and potentially other PPH staff involved in or with knowledge of the issues addressed in the limited, written discovery).  DHS also seeks a sur-reply to the motion for preliminary injunction.

In sum, relief is appropriate under the circumstances.  DHS seeks limited, expedited discovery to defend against the expanded preliminary injunction sought by PPH.  The limited, expedited discovery is reasonable in light of all the surrounding circumstances—most notably, PPH's renewed made-for-litigation representations for purposes of a preliminary injunction that it will now *really* discontinue Medicaid services despite identical, untrue representations to this Court in the past.  Moreover, there will no (or negligible) prejudice to PPH and its patients because the discovery is specifically targeted and can be accomplished in a very short period of time with minimal resources.  DHS has committed to finishing discovery in less than one month, assuming PPH quickly responds to written discovery requests.

This Court should grant DHS's motion for limited discovery so that the parties (and the Court) can be adequately informed at a preliminary injunction hearing of the facts

affecting irreparable harm, instead of being forced to rely on questionable made-for-litigation representations made by an interested party—representations that have already proved inaccurate the last time they were made and accepted by the Court.

**B.    Preliminary injunction standard**

Some courts apply a more rigid preliminary injunction standard, although such a standard is disfavored by most courts.  The Eighth Circuit has not definitively decided the issue.  The higher standard requires a showing of the following: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if expedited relief is granted."  *St. Louis Group,* 275 F.R.D. at 239.

That standard appears to potentially apply to plaintiffs requesting discovery in support of a preliminary injunction.  It certainly does not make much sense in the context of a defendant requesting discovery to resist a preliminary injunction.  The good cause standard makes much more sense in such circumstances, and should be the test used to determine the propriety of this discovery motion.   In any event, PPH and its CEO have made unfounded representations that go to the heart of the irreparable harm element of a preliminary injunction.  There is far more than "some connection" between the expedited discovery and the outcome of the preliminary injunction motion.  Under either standard, DHS is entitled to expedited, limited discovery.

**IV.    CONCLUSION**

The Court should grant DHS's motion for expedited discovery for the foregoing reasons.  The Court should also allow DHS a sur-reply regardless of how it decides the discovery dispute.

WHEREFORE, defendant, John Selig, as Director for the Department of Human Services, prays that this Court grant his motion for expedited discovery, permission to file a sur-reply, and for all other just and appropriate relief.

Respectfully submitted,

/s/ *Lee P. Rudofsky*
Lee P. Rudofsky (2015015)
Solicitor General of Arkansas
Office of the Arkansas Attorney General
323 Center St., Suite 300
Little Rock, AR 72201
(501) 682-2007 (main phone)
(501) 682-8118 (fax)
lee.rudofsky@arkansasag.gov

/s/ *David W. Sterling*
David W. Sterling (97182)
Chief Counsel
Arkansas Department of Human Services
P.O. Box 1437, Slot S260
Little Rock, AR 72203-1437
(501) 320-6355 (direct)
(501) 682-8009 (fax)
david.sterling@dhs.arkansas.gov

*Attorneys for Defendant*

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on May 5, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

Bettina E. Brownstein
bettinabrownstein@gmail.com

Jennifer Sandman
jennifer.sandman@ppfa.org


                                         /s/ *Lee P. Rudofsky*